IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CARL ZEISS MEDITEC, INC., a New York corporation, and CARL ZEISS SURGICAL GMBH, a German corporation, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 10-308-JJF |
| XOFT, INC., a Delaware corporation, | ) ) | |
| Defendant. | ) | |

**OPENING BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO
TRANSFER VENUE TO THE NORTHERN DISTRICT OF
CALIFORNIA PURSUANT TO 28 U.S.C § 1404(a)**

ORRICK, HERRINGTON
& SUTCLIFFE LLP

James W. Geriak
Kurt T. Mulville
Allan W. Jansen
4 Park Plaza, Suite 1600
Irvine, CA 92614
(949) 567-6700
jgeriak@orrick.com
kmulville@orrick.com
ajansen@orrick.com

Monte Cooper
1000 Marsh Rd.
Menlo Park, CA  94025
(650) 614-7400
mcooper@orrick.com


Dated:  July 9, 2010

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

Adam W. Poff  (No. 3990)
Pilar G. Kraman (No. 5199)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
pkraman@ycst.com


*Attorneys for Defendant*

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................. 1

II.    NATURE AND STAGE OF THE PROCEEDINGS ........................................ 1

III.   SUMMARY OF THE ARGUMENT ................................................... 2

IV.   FACTUAL BACKGROUND ............................................................ 3

     A.    The Parties to the Present Dispute ......................................... 3

          1.    Zeiss Meditech and Zeiss Surgical ............................... 3

          2.    Xoft ............................................................................ 3

V.    ARGUMENT ................................................................................. 6

     A.    The Legal Standards Used By The Courts In Evaluating A Transfer
          Under 28 U.S.C. § 1404(a). ...................................................... 6

     B.    This Case Could Have Been Brought in the Northern District of
          California. ............................................................................... 8

     C.    Application of the Facts in this Case – as Presently Known – to the
          Factors Identified in Relevant Delaware Authority Supports
          Transfer of this Case Pursuant to § 1404(a). ............................... 9

          1.    The Private Factors ..................................................... 9

              a.    The plaintiff's initial choice of forum................................ 9

              b.    The defendant's preference............................................... 10

              c.    Whether the claim arose elsewhere................................... 11

              d.    The convenience of the parties as indicated by their
                    relative physical and financial position............................. 12

              e.    The convenience of the witness ....................................... 14

                    (1)    Third party witnesses are not here ....................... 14

                  (2)    The inventors are not here................................... 15

               f.    The location of records and other documents.................. 16

          2.    The Public Factors ..................................................... 16

               a.    The ability of the Court to enforce the judgment............. 16

               b.    Practical considerations making trial easy,
                    expeditious, or inexpensive............................................. 16

               c.    The administrative difficulties posed by the relative
                    congestion of the two dockets in the respective fora ....... 17

i

# TABLE OF CONTENTS
(continued)

**Page**

      d.    Any local interest in deciding local controversies at home.................................................................................... 17

      e.    The public policies of the fora ........................................ 18

VI.    CONCLUSION.................................................................................... 19

YCST01:9898937.1

069447.1001

## TABLE OF AUTHORITIES

**Page**

### CASES

*APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.,*
    295 F. Supp. 2d 393 (D. Del. 2002)...................................................... 11, 16

*Affymetrix, Inc. v. Synteni, Inc.,*
    28 F. Supp. 2d 192 (D. Del. 1998)................................................ 8, 9, 14, 17

*All States Freight, Inc. v. Modarelli,*
    196 F.2d 1010 (3d Cir. 1952)................................................................ 8

*Alloc, Inc. v. Quick-Step Flooring, Inc.,*
    No. 05-587, 2006 WL 3050815 (D. Del. Oct. 26, 2006) ............................. 9

*Ballard Med. Prods. v. Concord Labs., Inc.,*
    700 F. Supp. 796 (D. Del. 1988)....................................................... 6, 10

*Bell Tel. Labs. Inc. v. Int'l Bus. Machs. Corp.,*
    630 F. Supp. 373 (D. Del. 1984)...................................................... 10, 16

*Burroughs Wellcome Co. v. Giant Food, Inc.,*
    392 F. Supp. 761 (D. Del. 1975)....................................................... 9, 10

*Camasso v. Dorado Beach Hotel Corp.,*
    689 F. Supp. 384 (D. Del. 1988)........................................................... 8

*Clopay Corp. v. Newell Cos.,*
    527 F. Supp. 733 (D. Del. 1981)........................................................... 9

*Corixa Corp. v. IDEC Pharms. Corp.,*
    No. 01-615, 2002 WL 265094 (D. Del. February 25, 2002) ................... 12, 18

*E.I. DuPont de Nemours & Co. v. Diamond Shamrock Corp.,*
    522 F. Supp. 588 (D. Del. 1981)........................................................... 9

*General Felt Products Co. v. Allen Industries, Inc.,*
    120 F. Supp. 491 (D. Del. 1954)........................................................... 8

*General Instrument Corp. v. Mostek Corp.,*
    417 F. Supp. 821 (D. Del. 1976)....................................................... 9, 10

*Jumara v. State Farm Ins. Co.,*
    55 F.3d 873 (3d Cir. 1995)................................................................ 6, 7

iii

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Magee v. Essex-TEC Corp.,*
    704 F. Supp. 543 (D. Del. 1988)..................................................................... 9, 12, 13, 17

*Mekiki Co. v. Facebook, Inc.,*
    2010 WL 2348740 (D. Del. 2010) ........................................................................... 17

*Mentor Graphics v. Quickturn Design Sys., Inc.,*
    77 F. Supp. 2d 505 (D. Del. 1999)................................................................. 14, 16, 17

*Nilssen v. Everbrite, Inc.,*
    No. 00-189, 2001 WL 34368396 (D. Del. Feb. 16, 2001)................................... 7, 14

*Nilssen v. Osram Sylvania, Inc.,*
    No. 00-695, 2001 WL 34368395 (D. Del. May 1, 2001) ......................................... 14

*Pall Corp. v. Bentley Labs. Inc.,*
    523 F. Supp. 450 (D. Del. 1981).................................................................................. 9

*Paragon-Revolute Corp. v. C.F. Pease Co.,*
    120 F. Supp. 488 (D. Del. 1954).................................................................................. 8

*Pennwalt Corp. v. Purex Indus., Inc.,*
    659 F. Supp. 287 (D. Del. 1986)............................................................................... 13

*Ricoh Co. v. Honeywell, Inc.,*
    817 F. Supp. 473 (D. Del. 1993)........................................................... 9, 11, 17, 18

*Scott Paper Co. v. Faucet-Queens, Inc.,*
    No. 86-493, 1987 WL 28488 (D. Del. January 14, 1987) ......................................... 13

*Shatterproof Glass Corp. v. Guardian Indus. Corp.,*
    No. 86-607, 1987 WL 11773 (D. Del. May 4, 1987) ...................................... 9, 11, 13

*Shutte v. Armco Steel Corp.,*
    431 F.2d 22 (3d Cir. 1970)...................................................................................... 6, 7

*Sony Corp. v. Quantum Corp.,*
    16 U.S.P.Q. 2d 1446 (D. Del. 1990) ...................................................................... 8, 17

*Synthes USA LLC v. Spinal Kinetics, Inc.,*
    2009 WL 463977 (D. Del. 2008)............................................................................. 17

*Tischio v. Bentex, Inc.,*
    16 F. Supp. 2d. 511, 521 (D.N.J. 1998) ...................................................................... 9

iv

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Tse v. Apple Computer, Inc.*,
   No. 05-2149, 2006 WL 2583608 (D. Md. Aug. 31, 2006) ....................................... 14

**STATUTES**

28 U.S.C. § 1391(b) ................................................................................................... 6

28 U.S.C. § 1391(c) ................................................................................................... 6

28 U.S.C. § 1400(b) ................................................................................................... 6

28 U.S.C. § 1404(a) ............................................................................................. 1, 3, 6

35 U.S.C. § 1400(b) ................................................................................................. 10

## I.  INTRODUCTION

Defendant Xoft, Inc. ("Xoft") respectfully moves this Court to transfer this action for patent infringement brought by Carl Zeiss Meditec, Inc. and Carl Zeiss Surgical GmbH (collectively "the Zeiss Plaintiffs") against Xoft to the Northern District of California.  This motion is made for the convenience of the parties and witnesses and in the interest of justice pursuant to 28 U.S.C. § 1404(a).  Neither of the Zeiss Plaintiffs nor Xoft have any connection with Delaware other than Xoft's incorporation in Delaware.  This action could have been brought in the Northern District of California where Xoft and Zeiss Meditec reside and where the acts alleged to be patent infringement are occurring.

## II.  NATURE AND STAGE OF THE PROCEEDINGS

On April 16, 2010, the Zeiss Plaintiffs filed their Complaint for patent infringement against Xoft.  (Klein Declaration, ¶ 2)[1]  On May 26, 2010, the Zeiss Plaintiffs filed their First Amended Complaint.  (D.I. 9)  In their First Amended Complaint, the Zeiss Plaintiffs allege that Xoft is making, using, offering for sale and/or selling radiation devices, including, but not limited to, the Axxent Vaginal Applicator, the Axxent HDR X-ray Source, the Axxent Balloon Applicator, the Axxent Controller, and the Axxent Surface Applicator and that such acts constitute an infringement of U.S. Patent Nos. 6,421,416; 5,566,221, 5,621,780 and 6,285,735.  (Complaint, ¶¶ 16, 26, 36 and 46)  The original Complaint was filed without any prior notice of infringement to Xoft.  (Klein Declaration, ¶ 3)

---

[1] Filed with this memorandum is the Declaration of Michael Klein, the President and CEO of Xoft.  Reference to factual statements in this memorandum which support this motion shall be, as follows: "Klein Declaration, ¶ X."

### III.    SUMMARY OF THE ARGUMENT

1.      This case has no meaningful connection with the State of Delaware.  Instead, this dispute exists between a California-based company – Xoft – and another California-based company – Carl Zeiss Meditec, Inc., ("Zeiss Meditec") which is controlled by a German Company – Carl Zeiss Surgical GmbH ("Zeiss GmbH").  The only basis for Delaware jurisdiction over this case is that Xoft chose to incorporate in the State of Delaware.

2.      The patents at issue in this case – U.S. Patent Nos. 6,421,416; 5,566,221, 5,621,780 and 6,285,735 ("patents-in-suit") – are the result of activities by individuals residing in Massachusetts, which occurred many years ago at a company, Photoelectron, which no longer exists and from which the Zeiss Plaintiffs acquired the patents-in-suit.  All of the named inventors are stated in the patents-in-suit to be residents of Massachusetts and continue to reside there.

3.      It cannot be disputed that the center of gravity of this litigation is in the Northern District of California and this case properly could have been, and should have been, brought in that forum.  Zeiss Meditec has its principal place of business in Dublin, California.  Xoft's principal and only place of business and the only site of manufacture of the products alleged to infringe the patents-in-suit are in Sunnyvale, California, which is located in the Northern District of California.

4.      The Xoft products accused of infringement have not been sold in the State of Delaware.

5.      Xoft has no facilities or offices in the State of Delaware and has conducted no

YCST01:9898937.1                                                                                        069447.1001

business in the state.[2]

6.      All of the Xoft documents that may be relevant to the present action are located in the Northern District of California.  All of Xoft's employees who may provide relevant testimony are located in the Northern District of California.

7.      A substantial number of third-party witnesses, many of whom are former Xoft employees, with substantial knowledge of Xoft's activities relevant to the products accused of infringement, reside in the Northern District of California.

8.      28 U.S.C. § 1404(a) and case authority from this District warrant transferring this case to the forum where it should properly reside – the Northern District of California – for the convenience of parties and witnesses and in the interest of justice.

## IV.     FACTUAL BACKGROUND

### A.      The Parties to the Present Dispute.

#### 1.      Zeiss Meditec and Zeiss Surgical

Zeiss Meditec is identified in the Complaint as a New York corporation having its principal place of business in Dublin, California.  Zeiss Meditec, Inc. is apparently controlled by Zeiss GmbH, a German company located in Oberkochen, Germany.  Plaintiffs allege that their products include devices for radiotherapy and that Zeiss GmbH owns the patents-in-suit and has exclusively licensed them to Zeiss Meditec.

#### 2.      Xoft

Xoft is a privately-held, medical device company founded in 1998, which focuses on innovative x-ray devices and systems for treating cancer.

---

[2] One unsuccessful offer of sale of a Xoft device was made in Delaware, but no business was transacted as a result of that offer.

3

Xoft's only offices are located in Sunnyvale, California. (Klein Declaration, ¶ 34) Xoft does not own any property in the State of Delaware; is not registered to do business in the State of Delaware; does not lease any office space, or any other space, in the State of Delaware; does not have any warehouse or storage locations in the State of Delaware; does not have any distribution facilities in the State of Delaware; does not have any suppliers in the State of Delaware; does not have any repair facilities in the State of Delaware; and does not have any telephone number, listed or unlisted, in the State of Delaware. (Klein Declaration, ¶¶ 4-11)

Xoft does not employ any people in the State of Delaware; has not conducted any sales or marketing meetings in the State of Delaware; does not have any employees specifically assigned to travel to the State of Delaware for business purposes; does not run any advertisements in Delaware newspapers or specifically direct advertising to the merchants and consumers in the State of Delaware; does not have any marketing or sales operations located in the State of Delaware; does not have any independent sales agents in the State of Delaware. (Klein Declaration, ¶¶ 12-19)

Xoft does not sponsor any local events – such as scientific meetings – in the State of Delaware; does not conduct any regular or systematic business activities in the State of Delaware; and does not have an ongoing presence of any significant kind in the State of Delaware. (Klein Declaration, ¶¶ 20-22)

Xoft does not have any targeted or measured online campaigns or programs that target the State of Delaware. None of Xoft's data transmissions or online activity originate from the State of Delaware. Xoft does not record any revenue from a Delaware-related source; does not operate any subsidiaries or other related entities in the State of Delaware; does not own any bank accounts in the State of Delaware; does not file tax returns in the State of Delaware; and has

YCST01:9898937.1                                                                                  069447.1001

never brought suit in the State of Delaware or been sued in Delaware prior to this case. (Klein Declaration, ¶¶ 23-29)

All significant contracts, and specifically the terms and conditions that apply between Xoft and any other entity, generally identify California as the venue state. Any choice of law terms and conditions generally provide a California "choice of law" requirement. No Xoft contracts require a Delaware venue or mandate a Delaware "choice of law" requirement. (Klein Declaration, ¶ 30)

Furthermore, Xoft's current engineering personnel knowledgeable regarding the design, development, manufacture and use of its x-ray devices are all located in Northern California and work out of Xoft's main facility located in Sunnyvale, California. All international sales, international marketing, and support personnel work out of Xoft's main facility located in Sunnyvale, California. (Klein Declaration, ¶ 39) In addition, all of the documents related to the design, development, manufacture, international sales, distribution and use of Xoft's x-ray devices are located in northern Sunnyvale, California. All documents describing the functionality of Xoft's x-ray devices and Xoft's activities to secure regulatory approval for sale of its x-ray devices in the United States are located in Sunnyvale, California. No such documents are located in the State of Delaware. (Klein Declaration, ¶¶ 34-36)

In addition, there are a substantial number of former Xoft employees who reside in the Northern District of California and are subject to the subpoena power of that Court, but not of this Court. (Klein Declaration, ¶ 38)

In summary, other than incorporating in the State of Delaware, Xoft has no connection

5

with the State of Delaware.[3]

## V.   ARGUMENT

### A.   The Legal Standards Used By the Courts in Evaluating a Transfer Under 28 U.S.C. § 1404(a).

In their Complaint, the Zeiss Plaintiffs assert that venue is proper under 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b), because Xoft resides in this district and is subject to personal jurisdiction in this district.  (First Amended Complaint, ¶¶ 5, 7, 8)  But under those same venue provisions, venue is also proper in the Northern District of California, because Xoft has its principal place of business in that district, and thus resides in that district.[4]  Similarly, to the extent any infringement has occurred, for example, by manufacture of the Xoft radiotherapy devices, such infringing activity has occurred in the Northern District of California, and thus venue is also proper under the specific patent venue provision.  35 U.S.C. § 1400(b); *see also Ballard Med. Prods. v. Concord Labs., Inc.*, 700 F. Supp. 796, 798 (D. Del. 1988).

28 U.S.C. § 1404(a), which governs change of venue and provides a vehicle for this Court to transfer this case to the Northern District of California, states as follows:

> (a)  For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The decision to transfer a case is subject to the Court's discretion.  *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970); *see also Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-

---

[3] By virtue of incorporation in Delaware, Xoft does pay a Franchise Tax (Klein Declaration, ¶ 31).

[4] The requirements for establishing venue in a patent infringement suit are set forth in 28 U.S.C. § 1400(b) which provides, in part, that such a suit may be brought in any judicial district where a defendant resides, or where the defendant has committed acts of infringement and has a regular and established business.  Under 28 U.S.C. § 1391(c), a corporation is considered a resident for venue purposes in the district in which it is incorporated or licensed to do business or is doing business.

80 (3d Cir. 1995).  While Third Circuit authority states that this Court should not grant a motion

to transfer unless the "balance of convenience" weighs "strongly" in favor of transfer, *see Shutte*,

431 F.2d at 25, the inquiry in the Third Circuit of whether to transfer a case is a broad one and

involves the examination of "all relevant factors to determine whether, on balance, the litigation

would more conveniently proceed and the interests of justice [would] be better served by a

transfer to a different forum." *Jumara*, 55 F.3d at 879 (*quoting* 15 CHARLES A. WRIGHT,

ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION

AND RELATED MATTERS § 3847 (2d. ed. 1986)); *Nilssen v. Everbrite, Inc.*, No. 00-189, 2001 WL

34368396, at *1 (D. Del. Feb. 16, 2001) ("When determining whether or not transfer is

warranted under the circumstances, district courts must balance **all** of the relevant factors."

(emphasis added)).  The factors to be considered include a wide variety of private and public

interests.

The private interests include but are not limited to: (1) the plaintiff's initial choice of

forum; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the

convenience of the parties as indicated by their relative physical and financial position; (5) the

convenience of the witnesses – but only to the extent that they may be unavailable for trial in one

of the fora; and (6) the location of records and other documents – but, again, only to the extent

that these files could not be produced in the alternate forum.  *See Jumara*, 55 F. 3d at 879.

The public interests include, but are not limited to: (1) the ability of the Court to enforce

the judgment; (2) the practical considerations making trial easy, expeditious, or inexpensive: (3)

the administrative difficulties posed by the relative congestion of the two dockets in the

respective fora; (4) any local interest in deciding local controversies at home; as well as (5) the

public policies of the fora.  *Id.*

7

The *Jumara* list is "merely illustrative and by no means exhaustive." *See Affymetrix, Inc.*

*v. Synteni, Inc.*, 28 F. Supp. 2d 192, 197 (D. Del. 1998).[5]  However, the application of the facts

of this case to the *Jumara* factors "provide a solid foundation" supporting transfer of this action

to the Northern District of California. *Id.*[6]

**B.**    **This Case Could Have Been Brought in the Northern District of California.**

The threshold question the Court must ask is whether the Zeiss Plaintiffs could have

brought this action in the Northern District of California. *Affymetrix*, 28 F. Supp. 2d at 197.  If

the Court answers this question in the negative, then its inquiry ends. *See Camasso v. Dorado*

*Beach Hotel Corp.*, 689 F. Supp. 384, 386 (D. Del. 1988) (refusing to transfer the case when the

target forum could not exercise personal jurisdiction over one of the defendants).

In this case, there is no question that this action could have been brought in the Northern

District of California.  As stated above, Xoft has its principal place of business in Sunnyvale,

California, which is in the Northern District of California, and thus resides in that district.

In summary, this action could have been brought, and Xoft submits should have been

---

[5] For example, in *Sony Corp. v. Quantum Corp.*, 16 U.S.P.Q. 2d. 1446, 1447 (D. Del. 1990) the Court identified a slightly different, but similar set of factors: "The factors to consider include the locations of the parties' principal places of business; the location of the relevant business records; whether plaintiffs have chosen to litigate on their 'home turf'; the costs to the parties of transporting witnesses and documents; the relative subpoena power of the transferor and transferee courts over non-party witnesses; the relative travel time to each court; the relative docket congestion of each court; and whether there is a suit involving the same parties and issues before the transferee court."

[6] *See Affymetrix*, 28 F. Supp. 2d at 198 n.5 ("[A]s the Third Circuit Court of Appeals has noted, the words of Section 1404(a) 'should be considered for what they say, not with preconceived limitations derived from the *forum non conveniens* doctrine.'"); *All States Freight, Inc. v. Modarelli*, 196 F.2d 1010, 1011-12 (Fed. Cir. 1952); *see also Paragon-Revolute Corp. v. C.F. Pease Co.*, 120 F. Supp. 488, 489 (D. Del. 1954) ([D]isturbing plaintiff's choice of forum is no longer a rarity because of [Section] 1404(a) – defendant's mandatory margin for victory, then, need not be an overwhelming one) (relying on *All States Freight*; *General Felt Prods. Co. v. Allen Indus., Inc.*, 120 F. Supp. 491, 493 (D. Del. 1954) (recognizing that, under Section 1404(a), 'no longer should disturbing plaintiff's choice of forum be regarded sacrilegious ... if the three statutory factors dictate transfer'").

brought, in the Northern District of California. *Shatterproof Glass Corp. v. Guardian Indus.*

*Corp.*, No. 86-607, 1987 WL 11773, at *1 (D. Del. May 4, 1987).

    **C.**    **Application of the Facts in this Case – as Presently Known – to the Factors Identified in Relevant Delaware Authority Supports Transfer of this Case Pursuant to § 1404(a).**

        **1.**    **The Private Factors.**

            **a.**    **The plaintiffs' initial choice of forum**

      "The preference for honoring a plaintiff's choice of forum is simply that, a preference; it

is not a right." *E.I. DuPont de Nemours & Co. v. Diamond Shamrock Corp.,* 522 F. Supp. 588,

592 (D. Del. 1981); *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 481 (D. Del. 1993); *Clopay*

*Corp. v. Newell Cos.,* 527 F. Supp. 733, 735 (D. Del. 1981); *General Instrument Corp. v. Mostek*

*Corp.*, 417 F. Supp. 821, 825 (D. Del. 1976); *see also Alloc, Inc. v. Quick-Step Flooring, Inc.*,

No. 05-587, 2006 WL 3050815, at *3 (D. Del. Oct. 26, 2006) (transfer ordered where "[n]one of

the parties have facilities in Delaware nor maintain their principal place of business in

Delaware.").

      When a plaintiff brings suit in a forum which is not its "home turf", and which has no

connection with the facts or subject matter of the lawsuit, the convenience to the plaintiff in his

choice of forum is not entitled to as much weight as it would be if the plaintiff were litigating at

its principal place of business or the site of the activities of the lawsuit. *Burroughs Wellcome*

*Co. v. Giant Food, Inc.*, 392 F. Supp. 761, 763 (D. Del. 1975); *Affymetrix,* 28 F. Supp. 2d at 198-

99; *Tischio v. Bentex, Inc.*, 16 F. Supp. 2d. 511, 521 (D.N.J. 1998); *Pall Corp. v. Bentley Labs.*

*Inc.*, 523 F. Supp. 450, 452 (D. Del. 1981); *see also Magee v. Essex-TEC Corp.*, 704 F. Supp.

543, 547 (D. Del. 1988) ("[W]hen the plaintiff is not litigating in his 'home turf', it is less

    

difficult for the defendant to meet its burden of proof in demonstrating that the balance of factors

tips in favor of the transfer."). In *Ballard Med. Prods.*, the Court stated:

> "[I]f the plaintiff chooses a forum which has 'no connection to himself or the
> subject matter of the suit, and is thus not his 'home turf,' the burden on the
> defendant is reduced and it is easier for the defendant to show that the balance of
> convenience favors transfer.' Thus, where plaintiff is not on its home turf, the
> 'quantum of inconvenience to defendant needed to tip the balance of transfer is
> concomitantly reduced.'"

700 F. Supp. at 800 (citations omitted).

The Zeiss Plaintiffs' choice of forum should therefore be given little weight compared to

the balance of convenience, which strongly favors transfer.[7]

### b.    The defendant's preference

It is Xoft's preference that this litigation be transferred to the Northern District of

California. As stated above, Xoft has no connection with the State of Delaware, other than

having been incorporated in Delaware in 1998.[8]  In all other respects, Xoft is totally absent from

this state. On the other hand, the Northern District of California is highly preferable because it is

where Xoft's only office is located. All of its witnesses and all documents of Xoft are located in

the Northern District of California. The products at issue in this litigation are manufactured in

the Northern District of California.

Xoft does not maintain any facilities or employ any personnel in Delaware. It appears to

---

[7] *See also General Instrument,* 417 F. Supp. at 822-23; *Burroughs Wellcome,* 392 F. Supp. at
763; *Bell Tel. Labs. Inc. v. Int'l Bus. Machs. Corp.*, 630 F. Supp. 373, 375-76 (D. Del. 1984)
("Where, however, the Plaintiff has brought suit in a forum which is not its 'home turf' and
which has no connection with the subject matter of the lawsuit, the convenience to the Plaintiff
of litigation in its choice of forum is not as great. Therefore, it will be easier for the Defendant to
show that the balance of convenience favors transfer.").

[8] *General Instrument*, 417 F. Supp. at 822 ("Defendant is a Delaware corporation with its
principal place of business and the site of its semiconductor activities in Carrollton, Texas, a
twenty minute ride by car from the Dallas federal courthouse. All of defendant's allegedly
infringing activities occur in its Carrollton, Texas plant." Transfer ordered.).

be the same for Zeiss GmbH and Zeiss Meditec  Xoft manufactures none of its products (accused or otherwise) and conducts no research or development here.  Apparently, neither do Plaintiffs. Moreover, Xoft does not maintain any warehouses or other storage facilities in Delaware. Apparently, the same is true for Plaintiffs.  Additionally, Xoft stores no relevant files, records, or other documents in this District.  Apparently, the same is true for Plaintiffs.  Finally, Xoft does not keep any bank accounts, or telephone numbers in Delaware.  Apparently, the same is true for Plaintiffs.

### c.      Whether the claim arose elsewhere

There can be no dispute that the heart of the actions which have given rise to Plaintiffs' patent infringement action resides in the Northern District of California.  As stated above, the accused products are all designed, developed and manufactured in the Northern District of California.

The focus of the inquiry thus becomes – what is the "center of gravity" of the dispute? "In finding that 'center of gravity,' a district court 'ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its *production*.'  Appropriate considerations include the location of a product's development, testing, research and production. Also relevant is the place where marketing and sales decisions were made, rather than where limited sales activity has occurred."  *Ricoh Co.*, 817 Supp. At 481-82 n.17(citations omitted). This District Court has found that a patent infringement case filed here, because the defendant is incorporated here, should be transferred to the location lying at the "center of the dispute." *Shatterproof Glass*, 1987 WL 11773, at *2-3.  Similarly, in *APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.*, 295 F. Supp. 2d 393, 398-99 (D. Del. 2002), the Court held that: "Where an alternative forum is more convenient and has more substantial connection with the litigation, incorporation

in Delaware will not prevent transfer."

**d.     The convenience of the parties as indicated by their relative physical and financial position**

The physical location of Xoft is in the Northern District of California.  The physical location of Zeiss Meditec is in California.  The physical location of Zeiss GmbH is in Germany. All of the development activities which appear to have resulted in the patents-in-suit occurred in Massachusetts.

Certainly, the financial position of the two companies strongly tips the balance in favor of transferring this action to the Northern District of California.  As stated, Ziess GmbH is a huge, multi-national company with approximately 12,000 employees.[9]  Zeiss GmbH has achieved billions of dollars in annual sales revenue.  The Zeiss Plaintiffs certainly have the financial ability to fund this litigation if the litigation goes forward in the Northern District of California. *Corixa Corp. v. IDEC Pharms. Corp.*, No. 01-615, 2002 WL 265094, at *3 (D. Del. February 25, 2002) ("GSK is one of the world's largest pharmaceutical companies, and cannot complain about location.")

On the other hand, Xoft is a small, start-up company.  Conducting this litigation in Delaware, and particularly a trial in Delaware, would severely impact the financial position of Xoft.  Because it is a small company, with a limited number of employees, to remove any key personnel from their day-to-day activities at Xoft for the purpose of attending a trial in Delaware would be a severe burden to the company.  (Klein Declaration, ¶ 40); *see also Magee*, 704 F. Supp. at 548 ("In the present case, all of the witnesses, however, are key employees of Essex whose prolonged absence would cause severe financial hardship to the Defendant which could threaten its existence.  In addition, their absence from work and their travel expenses to

---

[9] See http://www.zeiss.de/C12567A100537AB9/Contents-Frame
17167234C76E5BBA41256A78004D7636.

Wilmington would be greater than if they could attend trial in California. It is appropriate for the Court to consider 'the prolonged absence' of proposed witnesses in assessing the convenience of the parties and witnesses.") (citations omitted).

In determining the "interests of justice", the court may take into account the financial condition of the parties involved.[10] *See Scott Paper Co. v. Faucet-Queens, Inc.*, No. 86-493, 1987 WL 28488, at *1-2 (D. Del. January 14, 1987). *See also Shatterproof Glass*, 1987 WL 11773, at *2 ("Guardian has made a strong showing of the convenience to it of transfer to Michigan. The affidavits submitted in support of this motion indicate that all the potential employee-witnesses and documents are located in the Eastern District of Michigan. . . . If trial is held in Detroit, instead of in Wilmington, these individuals will not incur travel or lodging expenses, nor will they need to be away from work for a long period of time."); *Pennwalt Corp. v. Purex Indus., Inc.*, 659 F. Supp. 287, 290 (D. Del. 1986) ("The record in this case, however, indicates that the inconvenience defendant Purex would bear if compelled to litigate in this District is significantly greater than that plaintiff Pennwalt would bear if the Court permits transfer to California. Unlike Pennwalt, Purex is a small company in the process of liquidation

---

[10] *See, e.g., Magee,* 704 F. Supp. at 549 ("Cost to the parties and access to proof are relevant factors to be considered in determining the interests of justice. In determining the cost to the parties, the court may take into account the financial condition of the parties involved. In the present case, Defendant presents evidence that it is a small corporation employing only twenty-five people. Essex has not made a profit since it became an independent entity in 1982 and is currently heavily in debt with all of its assets pledged as security for the indebtedness. If Essex were forced to litigate this case in Delaware, it would be required to ship its corporate records relating to the infringing activities to Delaware. In addition, Essex would be forced to reimburse its witnesses for at least their travel and subsistence expenses. Furthermore, if those persons currently employed by Essex are willing to attend trial in Delaware, they will be entitled to demand continuance of their salaries during their attendance. Payment of these expenses would present a financial hardship on Essex given their current financial condition. In addition, if Messrs. Kaufman, Moore, Echols and Mrs. Diaz were required to be absent from Essex, the ability of Essex to operate will be severely handicapped. Taken together, these factors indicate that litigation of this case in Delaware would create a substantial financial hardship on Essex, thereby threatening its continued existence.") (citations omitted).

13

and has only 16 employees.  Attendance by any substantial number of these employees at a

lengthy trial in Delaware would place a significant and onerous burden on Purex." . . .).

### e.      The convenience of the witnesses.

The convenience of the witnesses is the most important factor in venue transfer analysis.

*Mentor Graphics v. Quickturn Design Sys., Inc.*, 77 F. Supp. 2d 505, 510 (D. Del. 1999);

*Everbrite,* 2001 WL 34368396, at *2.  While the convenience of witnesses that are employees of

a party carries no weight because the parties are obligated to procure their attendance at trial (*see*

*Affymetrix,* 28 F. Supp. 2d at 203;  *Mentor Graphics*, 77 F. Supp. 2d at 510), "[a] party need not

allege that a witness definitely will be unavailable for trial; rather, it is sufficient for purposes of

venue transfer analysis if the witness is not subject to a court's subpoena power." *Everbrite*,

2001 WL 34358396, at *2.[11]  Here, as demonstrated below, there is a substantial number of

former employees of Xoft, both technological and financial, who reside in the Northern District

of California and are not subject to the trial subpoena power of this Court.  (Klein Declaration, ¶

38)

### (1)    <u>Third party witnesses are not here</u>

The convenience of potential non-party witnesses must be considered and balanced.

*Ricoh,* 817 F. Supp. at 484;  *Nilssen v. Osram Sylvania, Inc.*, No. 00-695, 2001 WL 34368395, at

*3 (D. Del. May 1, 2001).

Xoft's technology was initially developed in large part by Dr. Paul Lovoi, former Chief

---

[11]*See also Tse v. Apple Computer, Inc.*, No. 05-2149, 2006 WL 2583608, at *4 (D. Md. Aug. 31,
2006) ("This is not a case, however, where witnesses are located in both Maryland and
California and the Court must determine whether the handful from California are critical to the
case.  Rather, there are no employees in Maryland, and the vast majority of Defendants'
employees who worked on the allegedly infringing products and software are in California, with
the exception of a small number of MusicMatch employees in Florida and a single Apple
employee in Colorado.").

069447.1001

Technical Officer, who is no longer a Xoft employee, but resides in the Northern District of California.  Other developers of this technology who are no longer employees of Xoft and are not within the subpoena power of this Court, but reside in the Northern District of California, include Steven Axelrod, former Sr. Director Applied Research; Michael Forman, former Principal Scientist; Steven Hansen, former Vice President, Research & Development; Joseph Heanue, former Vice President, Research & Development; Robert Matthews, former Executive Vice President of Engineering; and Peter Smith, former Vice President, Manufacturing.

Furthermore, other former Xoft employees who reside in the Northern District of California and who would be expected to provide testimony on financial matters include:  Deryl Banks, former Chief Financial Officer; Paul Farmer, former Chief Financial Officer; and Horst Adam, former President and Chief Executive Officer.  Still further, Kathryn O'Shaughnessy, former Chief of Clinical and Regulatory Affairs and Margarita Ortigas-Wedekind, former Senior Vice President of Marketing, who reside in the Northern District of California, would be expected to provide testimony with regard to their areas of responsibility.

Thus, there is an unusually large number of former Xoft employees who held positions at senior levels who are probable third-party witnesses and who are not in Delaware, but are present in the Northern District of California.  To deprive a jury of the live testimony of these witnesses would be a disservice to the jury.  These non-party witnesses are highly material to the litigation and Xoft's defense.  If the case is transferred to the Northern District of California, these former Xoft employees, who reside in the Northern District of California, would be subject to the subpoena power of that court.

### (2)    The inventors are not here

As stated, all of the inventors of the patents-in-suit reside in Massachusetts and are not

15

employees of either of the Zeiss Plaintiffs and are thus not subject to the trial subpoena power of this Court. *See, e.g., Mentor Graphics*, 77 F. Supp. 2d at 511 ("Mentor's opposition to transfer rests heavily on the three inventors of the Barbier patents, each of whom resides in France. Quickturn does not dispute the importance of testimony from these three witnesses. But Mentor has failed to support its assertion that these witnesses make Delaware a more appropriate forum than Northern California."); *see also APV*, 295 F. Supp. 2d at 399; *Bell Tel.*, 630 F. Supp. at 376 ("Consequently, none of RCA's work on the invention was done in Delaware and none of their records or witnesses are in Delaware.").

### f.    The location of records and other documents.

Mr. Klein's declaration makes it clear that no documents relating to the design, development, manufacture or use of accused Axxent devices are located in the State of Delaware. All of those documents are located in the Northern District of California. Moreover, all of the documents relating to the use and attempt to obtain regulatory approval of the Axxent devices from the FDA are located in the State of California. None of those records are located in the State of Delaware.

### 2.    The Public Factors.

One of the most significant criteria in determining the advisability of transfer is the "interest of justice." *Id.* at 453. Under *Jumara*, many "public" factors are considered in evaluating the "interest of justice."

### a.    The ability of the Court to enforce the judgment

It is without question that either this Court or the Courts in the Northern District of California would be able to enforce any judgment in this case.

16

### b. Practical considerations making trial easy, expeditious, or inexpensive

One of the important factors for the Court to consider is whether certain witnesses may be subject to process from this Court. *Magee*, 704 F. Supp. at 550 ("In any event, since these witnesses are not subject to compulsory process in Delaware, it would better serve the interests of justice for the case to be transferred to California where the witnesses would be subject to process under Rule 45 (e)(1)."). While Xoft does not yet have a witness list, because of the early stage of these proceedings, it is expected that certain of the witnesses – namely, the initial developers of the Axxent technology, third-party suppliers, and other percipient witnesses to the development of the Axxent technology who reside in the Northern District of California – will necessarily be called at trial.

### c. The administrative difficulties posed by the relative congestion of the two dockets in the respective fora

There is no discernable administrative difficulty which would result from transfer of this case to the Northern District of California. The judges of the Northern District are familiar with patent cases and this Court has transferred many cases to that district, e.g., *Affymetrix, Sony, Mentor Graphics, Quickturn Design Systems* and, most recently *Synthes USA LLC v. Spinal Kinetics, Inc.*, 2009 WL 463977 (D. Del. 2009) and *Mekiki Co. v. Facebook, Inc.*, 2010 WL 2348740 (D. Del. 2010).

### d. Any local interest in deciding local controversies at home

There is no local interest involved in this case. Neither of the parties are present in the state of Delaware. As stated, none of the operative facts find their situs in the state of Delaware. *Ricoh*, 817 F. Supp. at 486 ("In addition, as previously discussed, the locus of this action is based largely in Minnesota by virtue of the fact that the design, development, manufacture and marketing of Honeywell's AWM Sensors and Sensor Control systems occurred largely in

Minnesota.  Because Minnesota is the locus of the majority of alleged culpable conduct,

Minnesota has a strong public interest in adjudicating this dispute."); *see also Corixa*, 2002 WL

265094, *4 ("Three of the parties in this action are Delaware corporations.  However, while the

court is mindful of Delaware's interest, that alone will not tip the 'balance of convenience' in its

favor.  This is so because the court can hardly describe the patents as a local controversy unique

to Delaware.").

Moreover, there is no need to burden a jury in the state of Delaware with this

controversy, which involves corporations with principal places of business outside of this

jurisdiction.  *Ricoh*, 817 F. Supp. at 487 ("New Jersey jurors should not be burdened with

adjudicating a matter concerning allegations of patent infringement stemming from conduct

which is/was largely localized in Minnesota and Illinois.").

> ### e.   The public policies of the fora.

Both this District and the Courts of the Northern District of California have a policy of

enforcing valid patent rights.  Both Districts also have a policy which includes preventing

plaintiffs from asserting baseless claims of patent infringement.

YCST01:9898937.1

069447.1001

## VI.   CONCLUSION

For the foregoing reasons, this Court should exercise its discretion and transfer this action

to the Northern District of California for the convenience of the parties and witnesses and in the

interest of justice.

YOUNG CONAWAY STARGATT
& TAYLOR LLP

*/s/ Adam W. Poff*
_____

Adam W. Poff (No. 3990)
Pilar G. Kraman (No. 5199)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
pkraman@ycst.com

*Attorneys for Defendant*

*Of Counsel:*

**ORRICK, HERRINGTON &
SUTCLIFFE LLP**
James W. Geriak
Kurt T. Mulville
Allan W. Jansen
4 Park Plaza, Suite 1600
Irvine, CA 92614
(949) 567-6700
jgeriak@orrick.com
kmulville@orrick.com
ajansen@orrick.com

Monte Cooper
1000 Marsh Rd.
Menlo Park, CA  94025
(650) 614-7400
mcooper@orrick.com

Dated:  July 9, 2010

19

## CERTIFICATE OF SERVICE

I, Pilar G. Kraman, Esquire, hereby certify that on July 9, 2010, I caused to be

electronically filed a true and correct copy of the foregoing with the Clerk of the Court using

CM/ECF, which will send notification that such filing is available for viewing and

downloading to counsel of record.

I further certify that I caused a copy of the foregoing document to be served via

e-mail  on the below listed counsel:

William J. Marsden, Jr. [marsden@fr.com]
Linhong Zhang [lwzhang@fr.com]
Fish & Richardson P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, Delaware 19801
(302) 652-5070

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Pilar G. Kraman*

Pilar G. Kraman (#5199)
The Brandywine Building
1000 West St., 17th Floor
Wilmington, Delaware 19899-0391
pkraman@ycst.com
302-571-6600

*Attorney for Defendant Xoft, Inc.*

069447.1001