IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CARL ZEISS MEDITEC, INC., a New York corporation, and CARL ZEISS SURGICAL GMBH, a German corporation, <br><br>Plaintiffs,<br><br>v.<br><br>XOFT, INC., a Delaware corporation,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) C.A. No. 10-308-JJF-MPT<br>)<br>)<br>)<br>)  |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS
MOTION TO TRANSFER VENUE TO THE NORTHERN
DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C § 1404(a)**

ORRICK, HERRINGTON
& SUTCLIFFE LLP

James W. Geriak
Kurt T. Mulville
Allan W. Jansen
4 Park Plaza, Suite 1600
Irvine, CA 92614
(949) 567-6700
jgeriak@orrick.com
kmulville@orrick.com
ajansen@orrick.com

Monte Cooper
1000 Marsh Rd.
Menlo Park, CA 94025
(650) 614-7400
mcooper@orrick.com

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

Adam W. Poff (No. 3990)
Pilar G. Kraman (No. 5199)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
pkraman@ycst.com

*Attorneys for Defendant*

Dated: August 5, 2010

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

I.   INTRODUCTION ................................................................................................... 1

II.  PLAINTIFFS OVERSTATE THEIR CHOICE OF FORUM ARGUMENT ............. 3

     A.   Plaintiffs' Cases Are Factually Distinguishable .............................................. 3

III. PLAINTIFFS HAVE NOT MADE ANY SHOWING THAT
     WILMINGTON WOULD BE MORE CONVENIENT FOR
     THEM THAN THE NORTHERN DISTRICT OF CALIFORNIA ........................... 6

IV.  THE CENTER OF GRAVITY OF THIS CASE IS IN CALIFORNIA ...................... 8

V.   PLAINTIFFS OVERSTATE THE SIZE AND NATURE OF
     XOFT'S BUSINESS ................................................................................................. 9

# TABLE OF AUTHORITIES

**Page**

**CASES**

*3Com Corp. v. D-Link Systems, Inc.*,
   2003 WL 1966438 (D. Del. 2003)..................................................................................1, 2, 7, 9

*Acuity Brands, Inc. v. Cooper Indus., Inc.*,
   2008 WL 2977464 (D. Del. 2008)..............................................................................................3, 4

*Affymetrix, Inc. v. Synteni, Inc.*,
   28 F. Supp. 2d 192 (D. Del. 1998)..............................................................................................3

*Amgen, Inc. v. Ariad Pharm., Inc.*,
   513 F. Supp. 2d 34 (D. Del. 2007)..............................................................................................3

*Angiodynamics, Inc. v. Vascular Solutions, Inc.*,
   C.A. No. 09-554-JJF (D. Del. July 30, 2010)............................................................................2

*Automotive Tech. Int'l, Inc., v. American Honda Motor Co.*,
   2006 WL 3783477 (D. Del. 2006)..............................................................................................3

*Ballard Medical Products v. Concord Laboratories, Inc.*,
   700 F. Supp. 796 (D. Del. 1988)................................................................................................1

*CNH Am. LLC v. Kinzenbaw*,
   2009 WL 3737653 (D. Del. 2009) ..........................................................................................4, 5

*In re Cyclobenzaprine Hydrochloride Extended
Hyphen Release Capsule Patent Litigation*,
   693 F. Supp. 2d 409 (D. Del. 2010)............................................................................................4

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009) ................................................................................................9

*In re Nintendo Co., Ltd.*,
   589 F.3d 1194 (Fed. Cir. 2009)..................................................................................................9

*In re TS Tech USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008) ................................................................................................9

*Mallinckrodt, Inc. v. E-Z-EM Inc.*,
   670 F. Supp. 2d 349 (D. Del. 2009)............................................................................................3

*Nilssen v. Everbrite, Inc.*,
   2001 WL 34368396 (D. Del. 2001)............................................................................................8

*QinetiQ Ltd. v. Oclaro, Inc.,*
    2009 WL 5173705 (D. Del. 2009) ...................................................................5, 7

*R2 Technology, Inc. v. Intelligent Systems Software, Inc.,*
    2002 WL 31260049 (D. Del. 2002) ............................................................................3

*Ricoh v. Honeywell, Inc.,*
    817 F. Supp. 473 (D. ...........................................................................................8, 9

*Shatterproof Glass Corp. v. Guardian Industrial Corp.,*
    1987 WL 11773 (D. Del. 1987) ..................................................................................9

*Teleconference Sys. v. Proctor & Gamble Pharm., Inc.,*
    676 F. Supp. 2d 321 (D. Del. 2009) ...........................................................................8

*Truth Hardware Corp. v. Ashland Products, Inc.,*
    2003 WL 118005 (D. Del. 2009) ................................................................................4

*Tsoukanelis v. Country Pure Foods, Inc.,*
    337 F. Supp. 2d 600 (D. Del. 2004) ............................................................................4

*Wesley-Jessen Corp. v. Pilkington Vision Care, Inc.,*
    157 F.R.D. 215 (D. Del. 1993) ...................................................................................4

YCST01:10002943.1                                                                                                           069447.1001

## I.   INTRODUCTION

This case involves a Plaintiff, Carl Zeiss Meditec, Inc. ("Zeiss Meditec"), and a Defendant, Xoft, Inc. ("Xoft") whose principal places of business are 34 miles apart in Northern California. Nonetheless, Plaintiff Zeiss Meditec and a second Plaintiff, Carl Zeiss Surgical GmbH ("Zeiss GmbH"), located in Germany, have chosen to bring suit against Xoft in Wilmington, Delaware, which is 3,000 miles distant from the principal places of business of Xoft and Zeiss Meditec, and almost 4,000 miles distant from Germany, for no other reason than Xoft is incorporated here. Furthermore, given the fact that Zeiss Meditec is a New York corporation and Zeiss GmbH is a German corporation, the case has not been brought on the "home turf" of either Plaintiff. As stated in *Ballard Medical Products v. Concord Laboratories, Inc.*, 700 F. Supp. 796, 800 (D. Del. 1988): "[W]here plaintiff is not on its home turf, the 'quantum of inconvenience to defendant to tip the balance of transfer is concomitantly reduced.'" (quoting *ChryslerCorp. v. Woehling*, 663 F. Supp. 478, 482 (D. Del. 1987)).

Furthermore, the center of gravity of this case is in California, not Delaware. The facts relevant to transfer closely parallel those in *3Com Corp. v. D-Link Systems, Inc.*, 2003 WL 1966438, at*1-2 (D. Del. 2003), in which transfer from Delaware to the Northern District of California was ordered. In *3Com*, both plaintiff and defendant, as here, had their principal places of business in California, although plaintiff (unlike Zeiss Meditec or Zeiss GmbH) actually was a Delaware corporation while defendant was a California corporation. As here, neither 3Com nor D-Link maintained or owned any facility, property, or personnel in Delaware. Instead, as here, the headquarters of both parties were located in California, and neither party had any books, records, or other documents in Delaware. As here, none of the acts related to the development of the accused products occurred in Delaware, while all of these acts, as here, occurred in

California. Again, as here, defendant D-Link was forced to retain local counsel for purposes of litigating in Delaware. In addition, as here, none of the anticipated third-party witnesses were subject to compulsory process in Delaware, but at least some could be compelled to testify in the Northern District of California. These witnesses included, as here, individuals involved in the development of the accused products. In granting the Motion to Transfer in this factually analogous context, Judge Sleet observed:

> "In short, Delaware seems to have little interest in the present dispute between these parties, while justice, convenience, cost and expediency favor a form in California."

*3Com Corp v. D-Link Sys., Inc.*, 2003 WL 1966438, at *2. Judge Sleet's observations are equally apropos here.

Similarly, Judge Farnan in *Angiodynamics, Inc. v. Vascular Solutions, Inc.*, C.A. No. 09-554-JJF (D. Del. July 30, 2010) (attached as Exhibit A), granted a motion to transfer to the District of Minnesota because, as in *3Com*, even though the plaintiff was incorporated in Delaware, the defendant's current and past employees who were involved in the design and development of the allegedly infringing device were located in Minnesota and subject to the subpoena power of the Court there. So it is in the present case.

However, in opposing the present motion, Plaintiffs' primary argument is that Plaintiffs' choice of forum should be given overwhelming weight. This is not the law. As we show below, the cases relied upon by Plaintiffs in support of their choice of forum argument can be factually distinguished and Plaintiffs' arguments with regard to the factors relating to convenience are largely self-contradictory.

## II. PLAINTIFFS OVERSTATE THEIR CHOICE OF FORUM ARGUMENT

### A. Plaintiffs' Cases Are Factually Distinguishable.

Plaintiffs cite eleven (11) district court rulings which it contends support the notion that transfer is not warranted. However, all of these cases are easily distinguishable. Ironically, in one of Plaintiffs' cited cases, *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 208 (D. Del. 1998), the Court rejected the argument that plaintiff's choice of forum was determinative, and instead properly weighed *all* of the private and public factors both in favor of and against transfer in ruling that a patent infringement case brought by California corporation should be transferred to the Northern District of California, notwithstanding that both defendants were incorporated in Delaware.

In seven (7) of Plaintiffs' other cited cases, and completely unlike here, *both* the plaintiff and at least one of the defendants were Delaware corporations, such that there was a greater sense that the plaintiff had brought the suit on its "home turf." *See, e.g., Acuity Brands, Inc. v. Cooper Indus., Inc.*, 2008 WL 2977464, at *2 (D. Del. 2008) ("The Court notes that Delaware is Acuity's 'home turf,' and this fact alone sufficient supports a finding that Acuity's choice of this forum is proper and should be accorded a paramount consideration in any determination of a transfer request"); *Amgen, Inc. v. Ariad Pharm., Inc.*, 513 F. Supp. 2d 34, 46 (D. Del. 2007) (noting that both plaintiff and defendant were Delaware corporations); *Automotive Tech. Int'l, Inc., v. American Honda Motor Co.*, 2006 WL 3783477, at *2 (D. Del. 2006) (noting both plaintiff and one of the defendants were Delaware corporations), *R2 Technology, Inc. v. Intelligent Systems Software, Inc.*, 2002 WL 31260049 (D. Del. 2002), at *2 (noting that both parties were incorporated in Delaware); *Mallinckrodt, Inc. v. E-Z-EM Inc.*, 670 F. Supp. 2d 349, 351, 356-57 (D. Del. 2009) (noting that all four parties to the litigation were Delaware

3

corporations); *Truth Hardware Corp. v. Ashland Products, Inc.*, 2003 WL 118005, at *1 (D. Del. 2009) (noting that both plaintiff and defendant were Delaware corporations); *Wesley-Jessen Corp. v. Pilkington Vision Care, Inc.*, 157 F.R.D. 215, 217, 218 (D. Del. 1993) (noting that both plaintiff and defendant were Delaware corporations).

Similarly, in *In re Cyclobenzaprine Hydrochloride Extended Hyphen Release Capsule Patent Litigation*, 693 F. Supp. 2d 409, 412-13, 421-22 (D. Del. 2010), both the parent company of the plaintiff, and one of the defendants (who shared several members of the same corporate management team as the other co-defendant) were both Delaware corporations. Likewise, in *CNH Am. LLC v. Kinzenbaw*, 2009 WL 3737653, at *2 (D. Del. 2009), and unlike the situation here, the *plaintiff* was incorporated in Delaware and again therefore was somewhat akin to being in a situation where it was suing on its "home turf."

Obviously, there was a greater nexus in these nine decisions, all involving Delaware plaintiffs and all but one also involving Delaware defendants, than there is here. In all but one, the parties shared states of incorporation. As stated in *Acuity Brands, Inc. v. Cooper Indus., Inc.*, 2008 WL 2977464, at *2, when both parties are incorporated in Delaware, the defendant "cannot complain ... that another corporation has chosen to sue it here."

Indeed, the only case cited by Plaintiffs in which the plaintiffs were not themselves Delaware citizens, *Tsoukanelis v. Country Pure Foods, Inc.*, 337 F. Supp. 2d 600, 603-04 (D. Del. 2004), is not even a patent infringement action. There, the plaintiffs were both individuals who were Connecticut citizens who filed a diversity jurisdiction action for breach of contract against an Ohio-based national distributor of foods in Delaware (its state of incorporation). Under the facts of that case, unlike the situation here, the Court noted Delaware actually was "the next closest possible forum" to Connecticut. *Id.* at 604. In such circumstance, and unlike the

situation here (where Zeiss Meditiec and Xoft will both have to travel 3000 miles from California, and Zeiss GmbH will have to travel almost 4000 miles), "Plaintiffs reasonably assert that traveling to Delaware from Connecticut is less burdensome on them than traveling to Ohio; therefore, Delaware is a more convenient forum than Ohio." *Id.* Moreover, and wholly unlike the situation in the present case, the defendant also could not even identify any third-party witnesses who could not be compelled to testify at trial in Delaware. *Id.*

The broad distinctions in these cases underscore that fallacy of Plaintiffs' repeated reliance upon statements in the case law like that which they quote at page 9 of their Opposition: "A corporation's decision to incorporate in a particular state is a rational and legitimate reason to choose to litigate in that state." (quoting *Amgen, Inc. v. Ariad Pharmaceuticals, Inc.*, 513 F. Supp. 2d at 45). The quoted principle applies not, as the Zeiss Plaintiffs would have it, to defendants such as Xoft who incorporate in Delaware, but rather to Plaintiffs who have incorporated in Delaware and "choose" to litigate there, or who, like the plaintiffs in *Tsoukanelis*, have much more of a rational nexus to the forum than mere incorporation. This simply is not the situation discussed in, *CNH America LLC v. Kinzenbaw*, 2009 WL 3737653, at *2, which recognized the plaintiffs' choice of forum should be given weight when, unlike the situation here, the plaintiff is itself a citizen of the state of lawsuit:

> "This [recognition of the plaintiff's choice where to litigate] is particularly true in cases where the plaintiff is a corporate entity that is incorporated in Delaware, 'because a corporation's decision to incorporate in a particular state is a rational and legitimate reason to litigate in that state.'"

(citing *TriStrata Technology, Inc. v. Emulgen Laboratories, Inc.*, 537 F. Supp. 2nd 635, 643 (D. Del. 2008)). Rather, wholly ignored by Plaintiffs, is the principle that "in cases like the instant one where a lawsuit is brought in a district that is not the plaintiff's home forum, plaintiff's choice is accorded less weight." *QinetiQ Ltd. v. Oclaro, Inc.*, 2009 WL 5173705, at *3 (D. Del.

2009).

Xoft has not chosen to bring suit in Delaware. Just the opposite. In fact, it is glaring that not once in their Opposition do Plaintiffs explain why Delaware is a more convenient forum for Zeiss Meditec, which like Xoft is based in Northern California, and which like Ziess GmbH presumably also will have corporate and business representatives testify at trial. *Cf.* Zeiss Plaintiffs' Opposition, at 10 (identifying party witnesses for Zeiss GmbH who are expected to testify at trial, but making no mention of Zeiss Meditec witnesses).

Thus, when the cases cited by Plaintiffs are read with a reasonable degree of care, a plaintiff's incorporation in Delaware is given far greater weight in deciding a motion to more than a defendant's incorporation in Delaware. Neither Zeiss Plaintiff is incorporated in Delaware, however.

### III. PLAINTIFFS HAVE NOT MADE ANY SHOWING THAT WILMINGTON WOULD BE MORE CONVENIENT FOR THEM THAN THE NORTHERN DISTRICT OF CALIFORNIA.

Plaintiffs' convenience argument at pages 7-11 of the Opposition is largely based on the Stefan Brandstetter Declaration (Doc. No. 19) which says absolutely nothing about inconvenience of the Northern District of California for its party witnesses. Paragraph 4 of Brandstetter's Declaration merely states that four potential "party" witnesses live primarily in Germany with one located in New York. The Declaration carefully avoids identifying which party witnesses from Dublin, California-based Zeiss Meditec are also expected to testify, and instead states "at least" the combined five Zeiss Meditec and Zeiss GmbH witnesses will have to travel to Delaware from Germany or New York. *See* Brandstetter Decl. ¶ 4. In fact, the convenience of any out-of-state party witnesses, including those from Germany and New York, is a factor that has no more than limited application to party witnesses as the Zeiss Plaintiffs concede at page 10 of their Opposition.

6

As a matter of fact, the difference in flight time from Frankfurt, Germany to the international airport in San Francisco as compared to travel from Frankfurt to Philadelphia, the closest international airport to Wilmington, is minimal. By contrast, the overall trip from Germany to San Francisco is more convenient because, unlike arriving in Philadelphia, there is no need for further travel after landing in San Francisco. As such, this case is analogous to *QinetiQ Ltd. v. Oclaro, Inc.* 2009 WL 5173705, at *3, where, among other factors that the Court cited in transferring a patent infringement case brought by a plaintiff based in the United Kingdom against a defendant incorporated in Delaware but based in California was the fact that because "plaintiff's principal place of business is in the U.K.," that fact made "significant travel for plaintiff inevitable whether the case proceeds in Delaware or California."

Similarly, the Brandstetter Declaration, in paragraph 5, says nothing about perceived inconvenience to the non-party witnesses, one of whom also lives in Germany. More importantly, Plaintiffs utterly ignore the fact that none of the non-party witnesses they contemplate will testify at trial has any connection with Delaware whatsoever, as compared to the multiple non-party witnesses residing in California that Xoft identified in its Motion. The California non-party witnesses can testify live if they are subpoenaed to a Northern California trial, such that use of the depositions will be unnecessary. That is simply a condition that does not exist for any third party witness if the case remains in Delaware. *3Com Corp. v. D-Link Sys., Inc.*, 2003 WL 1966438, at *1 ("In addition, none of the anticipated third-party witnesses is subject to compulsory process in Delaware, but they may be compelled to testify in the Northern District of California").

Indeed, in one critical aspect, there is no symmetry between Plaintiffs' non-party witnesses who are not subject to the subpoena power of the Delaware Court and Plaintiffs' non-

7

party witnesses who are subject to the subpoena power of the Court in the Northern District of California. That is the guarantee of appearance at trial. "The ability of potential witnesses to be subject to compulsory process is also a factor that *weighs heavily* in the 'balance of convenience' analysis." *Teleconference Sys. v. Proctor & Gamble Pharm., Inc.*, 676 F. Supp. 2d 321, 333 (D. Del. 2009). Thus, as held in *Nilssen v. Everbrite, Inc.*, 2001 WL 34368396, at *2 (D. Del. 2001), "[a] party need not allege that a witness definitely will be unavailable for trial; rather it is sufficient for purposes of venue transfer analysis if the witness is not subject to a court's subpoena power." So it is here. If the case remains in Delaware, no non-party witnesses will be subject to the Court's subpoena power, whereas if the case is transferred to the Northern District of California, a substantial number of non-party witnesses will be within the Court's subpoena power, as well as all of the employees of Xoft and Zeiss Meditec.

## IV. THE CENTER OF GRAVITY OF THIS CASE IS IN CALIFORNIA.

In addition to the fact that Zeiss Meditec and Xoft both have their principal places of business close together in Northern California, the center of gravity of this case is also in Northern California. As held in *Ricoh v. Honeywell, Inc.*, 817 F. Supp. 473, 481-82 (D. Del. 1993):

> "In finding that 'center of gravity' a District Court 'ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its *production*.' Appropriate considerations include the location of a product's development, testing, research and production. Also relevant is the place where marketing and sales decisions were made, rather than where limited sales activity has occurred."

(Citations omitted).

In the present case, Xoft does not manufacture, develop, distribute, or sell any accused products in Delaware, or conduct any allegedly infringing activity in the state – whereas the opposite is true in California. Likewise, none of the parties' documents, books, records or

8

sources of evidence are located in the state, whereas again the opposite is true in California, where both Xoft and Zeiss Meditec are located. Thus, all of the factors enumerated in *Ricoh* involve activity in the Northern District of California and nowhere else. As held in *Shatterproof Glass Corp. v. Guardian Industrial Corp.*, 1987 WL 11773, at *1 (D. Del. 1987), the case should be transferred to the location lying at the "center of the dispute" because that factor outweighs the defendant's incorporation in Delaware. To the same affect as *3Com v. D-Link, supra*, in which the factors relating to the center of activity are essentially the same as those in this case. Plaintiffs have not disputed that the center of gravity of this case resides in the Northern District of California and have not responded to the showing made on page 11 of Defendant's Opening Brief.

Finally, to the extent that Plaintiffs at page 12 of their Opposition suggest that the location of books, records and other relevant materials do not favor transfer because such documents "likely are already maintained in electronic format or will be converted to electronic format for document production in this case," it bears noting that position has been repeatedly rejected by the Federal Circuit in a series of recent opinions. *See, e.g., In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1199 (Fed. Cir. 2009); *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320-21 (Fed. Cir. 2008). As stated in *In re Genentech, Inc.*, 566 F.3d at 1345: "'In patent infringement cases, the bulk of the relevant evidence usually comes from the infringer. Consequently, the place where the defendant's documents are kept *weighs in favor of transfer to that location*.'" (Quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006); emphasis added).

V.   **PLAINTIFFS OVERSTATE THE SIZE AND NATURE OF XOFT'S BUSINESS.**

In an effort to inflate the size and reach of Xoft so as to "neutralize" the disparity in the impact of the cost to litigate between the parties, the Zeiss Plaintiffs have submitted the

9

Declaration of Shelley Mack. The exhibits to this Declaration prove the opposite of what Plaintiffs contend concerning Xoft's resources. For example, Exhibit 1 to that Declaration states, in its last paragraph, that as of 2004, Xoft did not have any products on the market. Thus, the statement by Zeiss Plaintiffs that Xoft has been in existence for 10 years means that for at least half of its life, Xoft was unable to do any business at all – let alone infringing activity. Exhibits 2 and 4 relate not to Xoft, but to its distributor Elekta and relate to the 2009 distributorship relationship established between Xoft and Elekta. The size and reach of a distributor are vastly different from the size and reach of a manufacturer and the very reason a distributor is retained is because of lack of size and reach on the part of the manufacturer. Exhibit 3 states that the Xoft products have been available in the United States only since 2006 and the discussion of obtaining Canadian regulatory approval means only that Xoft is permitted to sell in Canada. This approval is utterly irrelevant to the size and reach of Xoft.

Exhibit 5 lists trade shows at which Xoft will have a representative. Once again, the number of trade shows a company appears at has nothing to do with its size. Exhibit 6 is an information piece relating to the use of a Xoft product. Once again, it has no relevance to the size or reach of Xoft. The same is true of a similar information piece attached to the Mack Declaration as Exhibit 7.

Thus, the Zeiss Plaintiffs' argument with regard to the size of Xoft are notable because of the total lack of factual support for Plaintiffs' position. The inferences drawn by Plaintiffs' counsel at pages 3 and 4 of the Opposition are unwarranted and are pure lawyer speculation. Paragraph 37 of the Klein Declaration is, in contrast, entirely factual and demonstrates that Xoft is indeed a very small company. Transfer is warranted.

YOUNG CONAWAY STARGATT
& TAYLOR LLP

/s/ *Pilar G. Kraman*
_____
Adam W. Poff (No. 3990)
Pilar G. Kraman (No. 5199)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
pkraman@ycst.com

*Attorneys for Defendant*

*Of Counsel:*

**ORRICK, HERRINGTON &
SUTCLIFFE LLP**
James W. Geriak
Kurt T. Mulville
Allan W. Jansen
4 Park Plaza, Suite 1600
Irvine, CA 92614
(949) 567-6700
jgeriak@orrick.com
kmulville@orrick.com
ajansen@orrick.com

Monte Cooper
1000 Marsh Rd.
Menlo Park, CA  94025
(650) 614-7400
mcooper@orrick.com

Dated:  August 5, 2010

11

## CERTIFICATE OF SERVICE

I, Pilar G. Kraman, Esquire, hereby certify that on August 5, 2010, I caused to be electronically filed a true and correct copy of the foregoing with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to counsel of record.

I further certify that I caused a copy of the foregoing document to be served via e-mail on the below listed counsel:

William J. Marsden, Jr. [marsden@fr.com]
Linhong Zhang [lwzhang@fr.com]
Fish & Richardson P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, Delaware 19801
(302) 652-5070

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ *Pilar G. Kraman*

Pilar G. Kraman (#5199)
The Brandywine Building
1000 West St., 17th Floor
Wilmington, Delaware 19899-0391
pkraman@ycst.com
302-571-6600

*Attorney for Defendant Xoft, Inc.*